WOLF MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8626. Promulgated March 5, 1928.

*James M. Johnson, Esq.,* and *Clyde H. Hunter, C. P. A.,* for the petitioner.

*John D. Foley, Esq.,* for the respondent.

## OPINION.

ARUNDELL: The overassessment for the year 1920 does not arise from the denial of a claim in abatement but results from an excess return of tax by the petitioner. There being no deficiency for that year, we are without jurisdiction and must dismiss the petition in so far as it applies to the year 1920. *Cornelius Cotton Mills*, 4 B. T. A. 255.

Petitioner's return for the year 1918 discloses a tax liability of $16,650.85, which amount was duly assessed. In February, 1924, the respondent made an additional assessment of $8,671.58, which latter amount petitioner did not pay and filed instead a claim in abatement, which claim was allowed in part and rejected in the amount of $725.21. From the rejection of the claim petitioner has brought these proceedings. The Board has jurisdiction. *Covert Gear Co.*, 4 B. T. A. 1025.

The respondent's position with respect to his disallowance of the sum of $1,129.27, claimed as a loss incurred in 1918 in connection with the operation of the hot water bottle branch of petitioner's business, is that the entries reflecting the loss were not made in the corporation's books and that there is no evidence to show whether it was the

business of the petitioner or of individuals trading under the firm name of F. Wolf & Sons. The evidence clearly establishes that the petitioner operated this branch as a side line of its regular business and not only recorded its transactions as a part of its accounting system, but paid its expenses and received its revenues. It necessarily follows that the difference between the expenses and receipts of the business, which we found, as a fact, to be $1,129.27, should be allowed as a deduction.

At the hearing petitioner amended its allegation of error with respect to the refusal of the respondent to transfer certain expenses, totaling $12,541.63, from 1919 to 1918 by reducing the amount claimed as a deduction to $7,907.97 and advancing the years involved one year.

The evidence presented to show error on the part of the respondent clearly establishes that, with the exception of the item of $2,449.37 for "local taxes for 1918," all of the entries in controversy are for liabilities incurred in 1919. In fact, many of the charges are for bills paid as early as November, 1918. The petitioner was on the accrual basis and made its returns on the basis of its books. Since the petitioner was on the accrual basis, the entries totaling $5,458.60, representing liabilities incurred in 1919 but not entered in the books of account until 1920, should be allowed as a deduction for the year 1919. *Robert P. Hyams Coal Co.*, 1 B. T. A. 217.

The item of $2,449.37 claimed as a deduction for "local taxes for 1918" presents a different question. Section 234(a)(3) of the Revenue Act of 1918 provides, in so far as it is pertinent here, that in computing the net income of a corporation there shall be allowed as a deduction "Taxes paid or accrued within the taxable year imposed * * * (c) by the authority of any State or Territory, or any county, school district, municipality, or other taxing subdivision of any State or Territory * * *." According to the evidence before us, the bills for the taxes in question were dated some time in the year 1918, were paid by check on April 1, 1920, and were entered in the corporate books as a charge to taxes and/or expenses on April 5, 1920. No explanation is given for the failure to accrue the liabilities on the books prior to the time of payment beyond the general statement that it was the practice of petitioner's bookkeeper not to enter invoices until he had accumulated a number of them. Nor has any evidence been offered as to the nature of these taxes other than that one of petitioner's exhibits designate them as "local taxes for 1918." In the absence of more detailed evidence as to the nature of the taxes and the year in which they accrued, we have no course open to us but to affirm the respondent as to this item.

The next issue concerns an alleged overstatement of profits on war contracts by $37,504.76.

It appears from the evidence presented on this issue that on June 17, 1919, goods manufactured under one or more of the contracts executed during the period referred to above, having an invoice value of $45,040.17, were shipped to the Government at Chicago, Ill., that the invoice rendered for the goods was approved for payment, but acting under instructions from the United States District Attorney, at Springfield, settlement was withheld, presumably pending the outcome of the criminal action brought by the Government against two of petitioner's officers for alleged violation of section 37 of the Penal Code; and that the claim was not settled until August, 1920, when it was allowed and paid to the extent of $42,468.65, as part of a total of $91,600.60 paid by the Government in settlement of claims arising out of all the contracts.

On an audit of petitioner's returns for the years 1918, 1919 and 1920, the respondent added this sum of $42,468.65 to petitioner's net income for the year 1919, without the allowance of any deductions therefrom on the ground that all deductions proper to be taken to determine the net income on war contracts had been taken in 1918, when the goods for which the amount was paid were manufactured. The petitioner's position was that the amount received should first be reduced by deducting the sum of $14,555.71 as a loss on machinery, tools and equipment purchased for and used exclusively in carrying out the contracts, and the further amount of $22,949.05 as expenses appertaining to the agreements. It now contends that its correct net income on war contracts for 1919 is not $4,963.89 but $5,812.20. This latter amount appears to have been reached by deducting from the gross amount received from the Government a percentage of the expenses and other operating costs of the entire business, the percentage being based on the ratio that the amount received from the Government bore to the total gross income of the corporation.

The evidence indicates that some work was performed under the contracts in 1919. Fred A. Wolf, secretary and treasurer of the corporation, testified on cross examination that the work done on the goods in 1919, as compared with the work performed in 1918, was from 3 per cent to 25 per cent, but admitted that he was guessing at the percentage. No evidence was offered to show loss on machinery, tools and equipment alleged to have been purchased for and used in the manufacture of the goods called for by the contracts, and the record is not only devoid of evidence of gross income and general expenses of petitioner's business but of expenses paid or incurred in 1919 in performing the agreements. As the petitioner failed to sustain its burden of proof, the action of the respondent is approved.

Fred Wolf and Paul A. Wolf, officers actively engaged in the management of petitioner's business, were indicted, tried and convicted by the United States Government under section 37 of the Penal Code (35 Stat. 1096) for conspiracy to defraud the Government by interfering with the proper inspection of goods manufactured under the war contracts hereinbefore mentioned. The petitioner employed counsel to defend its officers under the indictment and in connection therewith paid in 1919 as attorneys' fees the sum of $5,674.52.

If the amount involved in this assignment of error is to be allowed as a deduction from gross income, it must be on the ground that the expenditure is both an ordinary and a necessary expense of petitioner's business.

In each of the similar cases heretofore decided by the Board the expense sought to be deducted was paid or incurred in connection with an action brought against the taxpayer, rather than, as we have here, individuals, officers of the petitioner. If a corporation may not deduct as an ordinary and a necessary business expense attorneys' fees paid in defense of a criminal action brought against it, by the same reasoning, a taxpayer can not deduct as an ordinary and necessary business expense fees paid to counsel for defending its officers, even though in the commission of the crime for which they were charged the officers acted for and on behalf of the corporation pursuant to express or implied authority. Petitioner has failed to convince us that the item is an ordinary and a necessary expense in carrying on its business. *Appeals of Sarah Backer*, 1 B. T. A. 214; *John Stephens*, 2 B. T. A. 724; and *Columbus Bread Co.*, 4 B. T. A. 1126.

> *Judgment will be entered on 10 days' notice, under Rule 50.*